Next case is Mobileye Vision Technologies v. iOnRoad, 2017, 1984. Mr. Giron. Thank you, Your Honor. May it please the Court. I'd like to focus on two issues that are central to the appeal. The first issue is claim construction and the board's incorrect interpretation of Claim 6 that improperly reads out the term uniformly. This is especially problematic because that term is the key to how the likelihood of collision determination of that claim is made. The second issue is the board's application of the Goodrich reference to Claim 6. Goodrich doesn't describe a uniformly test as the basis for a collision prediction. In fact, the only reason Goodrich is being discussed is because the board read the term uniformly out of the claims. When that term is properly considered, the rejection of Claim 6 based on Goodrich fails, and because  the court should reverse the board's unpatentability decision relative to Claim 6 rather than remand. Turning to claim construction, Claim 6 specifies a particular way of predicting a likelihood of collision between an object and a vehicle. The test Claim 6 uses depends on a lateral displacement between the object and the vehicle and how this lateral displacement changes. For example, if the lateral displacement uniformly approaches zero, then the other hand, if the lateral displacement is deemed to not uniformly approach zero, then no collision will be predicted. The problem with the board's adopted construction, however, is that it reads the uniformly test out of the claim. The board stated that the phrase, quote, lateral displacement substantially uniformly approaches zero merely means that the obstacle is closing in on the vehicle and they will intersect, which is like saying the likelihood of collision prediction is made based on whether the object and the vehicle will collide. The board's construction is wrong because it lacks any reference to how the likelihood of collision determination is made. There's no reference in the construction to lateral displacement or to making the collision prediction dependent upon whether or not the lateral displacement uniformly approaches zero. Because the board's construction reads uniformly out of Claim 6, the court should at least vacate the board's unpatentability finding that was based on that erroneous construction. Did the parties ever ask for construction of the claim phrase, the lateral displacement substantially uniformly approaches zero? Yes, your honor. You asked for claim construction on that? The Mobileye did not ask for claim construction. What Mobileye urged was that all all terms of the claim be given their their meaning. However, Ion Road did offer a proposed construction to the And that's still your preferred, your preferred interpretation is just the ordinary meaning of the terms? That's correct, your honor. Yes. What do we make of the response of Ms. Tully to Justice Bowmeiser when he said if I see a drunk driver swerving between the legs and it's approaching me, nothing about whether what now they're measuring lateral displacement and the system says there's a likelihood of convision. Would your claim read on that? If it's in your lane, it will substantially uniformly approach zero. That's right, what? That's what she says without regard to lateral movement. Right, she was she was basically referring, I believe, to the example that's shown. Why isn't that consistent with the challenges? Well, so the interpretation... You have a collision that's, you know, it's uniformly substantially approach zero. Really, it's encapsulated in figures 2a and 2b. Figures 2a and 2b show an example where there are three cars approaching in three different lanes. And figure 2b plots the horizontal projection of the coordinates as it progresses over time. And as you can see from figure 2b, the center lane, which is 21c, exhibits a lateral displacement that uniformly approaches zero. However, the lanes on either right or the left exhibit lateral displacements that don't uniformly approach zero. As a result, the system can predict that the lane, the cars in the lanes on the right and left are not going to intersect with the host vehicle. In the council's response to the going along with that example and was saying, for example, if a drunk driver swerves into your lane, the system will predict if, for example, looking in terms of figure 2a, if the drunk driver is in the left lane, the system will see that it's following a path that is not of concern because its lateral displacement is not uniformly approaching zero at that time. However, if the drunk driver swerves into the lane and now is following the path of lane 21c, that would be one where it was judging the lateral displacement over time to be uniformly approaching zero, and then it would give an indication. It's also possible that the drunk driver could then swerve out of the lane and into another area, and it would then see no collision risk. And Gallagher, rather than using distance, uses velocity? I'm sorry? Gallagher, rather than measuring distances or relative distances the way the patent does, they measure velocity? Correct. They're saying if your velocity, if you take a look and if the person is moving into your lane at a consistent fixed velocity, and that's measuring that, predicting to where you are, then they predict the collision. That's right. The reference is actually Goodrich, and what Goodrich does is it finds a particular location of the vehicle, and what the current velocity is at that time, and rather than monitoring any change in lateral displacement over time, it just assumes that that current velocity will remain fixed over time, and it extrapolates. So the lateral velocity, the speed at which the car is coming into your lane. So the, whether it's... Gallagher, it speaks of lateral, right? I believe that... Goodrich. I don't know. Yes, it says current lateral velocity. That's right. So Goodrich is doing what you're doing. It's doing it with velocity instead of measuring distances. Right. So that's as simple as that, right? So the... The whole question is whether or not this one limitation in the claim is taught in the prior art anywhere. And the answer... All the other limitations are taught in the prior art. The answer is no, it's not, and the reason why is because, first, Goodrich doesn't do any test of lateral displacement as it changes over time. All it does is it locks in an assumption that current lateral velocity will remain the same. What's wrong with that? At that fixed velocity, you will substantially zero, very zero. What's wrong with that is that it doesn't monitor over time, and so it has no way of knowing. And as an example, to look at figure 2A, let's just assume that all three cars have constant lateral velocity, according to Goodrich. As they approach, all three cars having constant lateral velocity, still, it's true that only one is the one that exhibits the lateral displacement uniformly approaching zero. The two in the other lanes won't, even with the constant lateral velocity. So Goodrich, if it was looking at the situation of figure 2A, might come up with completely different collision predictions than the system of the 867 patent would. It's also illustrative to look at figure 2A and 2B with respect to the board's construction to see why and how the critical test of the Claim 6 has been left out. The board's construction was that lateral displacement substantially uniformly approaches zero merely means that the obstacle is closing in on the vehicle and will intersect. So if we look, if we apply the Claim 6 test to the situation of figure 2A, we're asking, I'm looking at the situation where three cars are approaching, three different lanes, and I'm trying to make a likelihood of collision determination based on whether the obstacle is closing in on the vehicle, so I see all three obstacles are closing in on the vehicle, and whether they will intersect. I have no way of knowing at that point how they will intersect because what I'm lacking is the test of Claim 6. And the test of Claim 6 tells me that how I know whether they're going to intersect is by monitoring the lateral displacement as it progresses over time. And if the changes are the same, if they're uniform, then they're uniformly approaching zero, and that's how I make the collision prediction. So the board's construction that it adopted eliminates that test and essentially guts Claim 6 and the meaning that it provides. So reversal rather than remand is appropriate here because the court has all the relevant evidence before it and is in just as good of a position as the board would be to decide the patentability with respect to Claim 6. There's no depositions, there's no expert testimony, and in fact all the evidence on the record that the parties have relied upon and the PTO has relied upon are just a few lines in Goodrich. And what they say are just what you conveyed was that it focuses on current lateral velocity, assumes that remains constant, and then makes a prediction. And that doesn't have the test of Claim 6. So... which is doing this job by velocity in your patent, which is doing it by distance and would easily be able to make the conversions in its own mind so that it would have no trouble at all seeing how one could read Goodrich and understand and apply it to this case. I didn't see the board relying on that argument, but it seemed to me that that argument would be pertinent on a remand. Yeah, I don't see that the board relied upon that argument. I know, but it's in the examiner's... obviously in the heart of the examiner's thinking. And actually to respond to that... Because you have these two different sciences that are trying to deal with a similar type problem, right? Right. And we all are familiar with distance equals rate times time, so we all have an intrinsic understanding of velocity and distance, and that's why we feel like it. And I would urge that looking at Figure 2a and 2b is actually counterintuitive because as the lateral displacement changing over time isn't directly related to velocity in our normal, ordinary sense of how it's viewed. Rather, when you go and look at the images and the projections of the cars as they approach, you can imagine if cars are approaching in your lane, they continuously get closer and closer and closer to you until you intersect. On the other hand, the cars on the left and right lanes, for example, as they approach on their path, they will look like they're approaching you, but then at some point they actually expand and move away from you. And that's why the lateral displacement isn't tied directly to current velocity. You are into your rebuttal time. You can continue or save it. One more point, Your Honor. So where the record lacks evidence to support an explanation other than the erroneous reasoning the board already provided, the Court's recent decision in DSS Technology v. Apple at 885 Fed 3rd 1367 suggests that reversal rather than remand would be appropriate. Thank you, Your Honor. Mr. Schoenhardt, is it? Good morning. Thank you, Judge Lurie. May it please the Court, I represent Ion Road today, and we respectfully request that this Court affirm the judgment of the Board with respect to Claim 6. There's something that Mr. Jerome pointed out to this Court on several occasions that I find troubling, and I would like to focus some time there. Mr. Jerome referred to what he called a uniformly test. He also referred to a test of lateral displacement over time, and he referred to monitoring lateral displacement over time. If we look to the language of Claim 6 itself, Claim 6 says a system according to Claim 5 wherein the processor determines a likelihood of confusion responsive to whether or not the lateral displacement substantially uniformly approaches zero. There is no test of whether the lateral displacement substantially uniformly approaches zero in that claim. There's no statement that the processor determines whether lateral displacement substantially uniformly approaches zero. The determination in Claim 6, rather, is as to a likelihood of collision based on lateral displacement substantially uniformly approaching zero. The determination is likelihood of collision, not a determination about the lateral displacement. This makes a big difference. But it does tell you, it says it determines the likelihood of collision, so that's the determination that Claim 6 is making. But it goes on and says responsive to whether or not, so it tells you how it makes that determination, so I'm not sure you can read out the remaining part of that claim. Well, Your Honor, I'm not looking to read out the remainder of the claim. I was first looking to highlight where the determination is made and what the determination is made regarding, that there is no express test of uniformity here or test of lateral displacement. Rather, the uniformity of lateral displacement is a factor taken into account in determining a likelihood of collision. If we look, then, into the specification of the 867 patent, the 867 patent teaches us to do the same thing that the Goodrich patent teaches us to do in very much the same way. If we look, for instance, to column 5 of the 867 patent, this is in the appendix at page 34, and I would direct Your Honors to lines 39 through 42. The patent reads, if there is no change in relative motion between the vehicle and the obstacle, the distance e to the obstacle will be closed in a time period t, that is, the time to contact is t. Similarly, in column 6 of the patent, beginning at line 7, the patent reads, in addition, assuming that there is no change in motion, as between the vehicle and the obstacle, and the passage goes on to explain how ultimately we'll reach a point of collision. The 867 patent, just like a Goodrich, is making an assumption that your lateral translation is going to continue uniformly, and based on that assumption of uniformity, is determining if uniform, will we collide. So let's assume it is uniform, then if that uniformity would put us in a point of collision, we say that here's the time to contact, yes, we will collide. That's consistent between the 867 patent and Goodrich. I see no difference there, and there is no test of uniformly. The other major point I would like to address that Mr. Truon made was the notion of reversal rather than remand here. First, I don't see any reason why we should need to get to that point, but if this court were inclined to decide that there was error in the board's decision, reversal would not be appropriate. As Judge Clevenger pointed out, the board here focused on what Goodrich teaches. The board did not feel the need to go to the extent, as had the examiner, of explaining in further detail what would have been obvious. The ultimate conclusion reached by the board was one of obviousness based on a combination of Matthews, Lee, and Goodrich. So we are faced with an obviousness determination. But as to the particular limitation of Claim 6 disclosed by Goodrich, the finding of the board was one of teaching. The board did not pass in the first instance before reaching this court on whether that would be obvious. I saw the case the same way in that it seemed to me that what was at stake was what Goodrich teaches. That's a fact question. So even if Goodrich might teach what your adversary says, if what you say Goodrich teaches is not unreasonable, you prevail on the standard of review. Yes, Your Honor. On the substantial evidence standard, we believe we prevail regardless. For me, it boils down if you're looking and saying, well, if I'm trying to decide if the case turns on what Goodrich teaches, then so long as I decide that the board's interpretation of Goodrich, which was that assuming the velocity stays the same, the lateral displacement is substantially approaching zero, then the case is over because the standard of review protects the board. Correct, Your Honor. Judge Rayna, earlier you raised the question of waiver. We take the view that claim construction was not specifically at issue or brought at issue by Mobileye in the proceedings below, nor did anything transpire in the proceedings below that would properly otherwise preserve such an argument to Mobileye at this time. Did you request the court for a specific instruction? In my view, what occurred below was not, in fact, a request for a construction of the term, but rather an explanation of how the language of Claim 6 reads in light of Goodrich. The language means was used. I don't dispute that, but it's in the context of a paragraph and a discussion of how to compare the claim language to the Goodrich reference. It's not a specialized time for claim construction. The one further note I would make on the claim construction point is that Mobileye has repeatedly asked for a plain and ordinary meaning construction without giving us any real guidance as to what that would be other than read the words. Clearly, I believe the board did read the words of the claim, appears to have recognized the words that were in the claim, and so simply a read-the-words construction would not get us any further than we already are. I'm happy to entertain any questions the panel may have. Otherwise, I would cede the remainder of my time. Thank you, counsel. Mr. Giron has a little rebuttal time left, if he needs it. Thank you, Your Honor. So one point that counsel brought up was that the 867 patent and Goodrich are both making assumptions of uniformity. And if that was the case, then there would be no need for the Claim 6 determination of looking to be responsive to whether or not lateral displacement changes uniformly or not. If it just made it... The next point with respect to claim construction below, as counsel recognized, the word means was used. In fact, it was done so in the context of X means Y, so claim term means Y. And I know of no better way to convey a proposed construction. It's one that Mobile Eye actually had a chance to respond to and did and identified the issues with the proposed construction, and it's the construction that the board adopted. So it's clear that the claim construction was at issue below, and that's the central focus of the appeal today. With respect to Mobile Eye's asking for a plain and ordinary meeting below, that's true. What Mobile Eye has been consistently asking for is for the word uniformly to be given weight, and that was raised to the examiner in the response to the ACP, the second office action response. It was effectively argued every step of the way, and what's really most important is that the uniformly language be given some meaning other than what the board's adopted construction did. Thank you. Thank you.